**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JOHNATHAN L. FRANKLIN,**

**Plaintiff,**

**v.** **Case No. 25-CV-974**

**TERRENCE JAEGER, *et al.*,**

**Defendants.**

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Johnathan L. Franklin, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Franklin was allowed to proceed on a claim against the defendants pursuant to the Eighth Amendment for allegedly failing to provide him with medically prescribed shoes, which resulted in Franklin sustaining an injury, and for treating his requests for accommodations after his injury with deliberate indifference. The defendants filed a motion for summary judgment on the ground that Franklin failed to exhaust his administrative remedies. (ECF No. 27.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 16.) The motion is fully briefed and ready for a decision.

**PRELIMINARY MATTER**

The defendants argued in their reply brief in support of their motion that Franklin failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56

when responding to their motion for summary judgment, failing to substantively dispute their proposed findings of fact. (ECF No. 37 at 2.) In response, Franklin filed an amended response to the defendants' motion, wherein he responded to the defendants' proposed findings of fact. (ECF No. 38.)

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in the light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The court will accept Franklin's amended response materials. Franklin also invokes 28 U.S.C. § 1746 in his second amended complaint, which is enough to convert the second amended complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Franklin's submissions where appropriate in deciding defendants' motion.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved

more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a prisoner must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements. Wis.

Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the corrections complaint examiner. Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the ICE acknowledged the inmate complaint, he may appeal to the corrections complaint examiner. Wis. Admin. Code § DOC 310.11(3).

The corrections complaint examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The corrections complaint examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the corrections complaint examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the corrections

complaint examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Franklin's Allegations and Attempts to Exhaust his Administrative Remedies*

Franklin filed his complaint with this court on July 8, 2025. (ECF No. 1.) On October 6, 2025, he filed an amended complaint. (ECF No. 7.) The original complaint includes a better description of the sequence of events, which the court will reference for the sake of clarity. Upon arriving at his off-site job, Franklin slipped on icy pavement while exiting the transport van, injuring his left ankle and lower back. (ECF No. 1 at 2.) The amended complaint does not allege when this occurred, but the original complaint says it was on April 7, 2025. As the events discussed below suggest, it appears that the April 7, 2025, date is incorrect and that Franklin fell sometime before then, although it is not clear when. He alleges that "prior to plaintiff [*sic*] injury there been an ongoing battle with Health Services Manager Kevin Johnson[1] for proper footwear" that Franklin was prescribed. (*Id.* at 3.) At some point, Johnson referred Franklin to Jaeger to get approval for the proper footwear, but then Jaeger would refer Franklin back to Johnson "as a means of toying with the plaintiff." (*Id.*) After Franklin suffered his injury, the defendants repeatedly ignored Franklin's requests for accommodations, such as a low-bunk restriction. (ECF No. 10 at 1.)

It is undisputed that Franklin filed one relevant inmate complaint—WCC-2025-3803—which the ICE received on March 18, 2025. (ECF No. 30-2 at 10.) In his inmate complaint, Franklin states, "The WCC HSUM Kevin Johnson & security is

[1] Later identified as defendant Keith J. Johnson (*See* ECF No. 18).

subjecting complainant to further injury or the unnecessary and wanton infliction of pain by denying & delaying orthopedic prescribed footwear." (*Id.*) Franklin noted that he had a congenital foot deformity since he was a child and was prescribed "supreme cushion soles and high-tops with arch supports." (*Id.*) However, HSU staff would only consider alternatives contained in the approved vendor catalogs, which were insufficient. (*Id.*) In support of his inmate complaint, Franklin submitted evidence of several inmate interview/information requests wherein he asked for proper shoes dating back to April 2024. (*Id.* at 14-23.)

On March 31, 2025, the ICE recommended dismissal of Franklin's complaint because HSU had provided Franklin with orthopedic shoes on September 6, 2024, that provided adequate support. (ECF No. 30-2 at 2.) On April 7, 2025, the reviewing authority accepted the ICE's recommendation and dismissed the case. (*Id.* at 3.)

On April 9, 2025, Franklin appealed the reviewing authority's decision. (ECF No. 30-2 at 24.) In his appeal, he states that, as a result of Johnson's decision to not provide him his prescribed shoes, "the complainant suffers from a broken or fractured ankle." (*Id.*)

On May 6, 2025, the corrections complaint examiner recommended dismissal of Franklin's appeal because HSU staff had provided adequate footwear. (ECF No. 30-2 at 5.) On May 19, 2025, the Office of the Secretary accepted the corrections complaint examiner's recommendation and dismissed the appeal. (*Id.* at 6.) The documentation submitted with the inmate complaint contains an email from the corrections complaint examiner, Alexander Engelkin, to HSU nurse Robert

Weinman, dated May 1, 2025, wherein the corrections complaint examiner asks, "Will you please send me the latest HSU documents re his footwear and visits with HSU re his foot? He now maintains he has a broken ankle related to the problem and I'm curious if there is truth to the claim." (*Id.* at 44-45.) Weinmann responded, noting that Franklin was seen by HSU staff on March 31, 2025, for a fall out of the work-release van[2], and Franklin requested an x-ray on April 3, 2025, which was completed on April 9, 2025. (*Id.* at 44.) Weinman also notes that Franklin "keeps insisting he needs to order airlift shoes from a nonapproved vendor, big box store, the issue has been addressed in the past, patient has been notified he can order hightop shoes from orthofeet catalog which patient refused." (*Id.*)

*Analysis*

It is undisputed that Franklin filed a relevant inmate complaint that was fully exhausted. However, the defendants argue that Franklin did not exhaust his administrative remedies on both the claim that he was denied his medically provided shoes and the claim that he was refused accommodations after his injury because he filed an inmate complaint *before* he was injured. The institution, then, did not have notice of these claims. Franklin argues that the institution was put on notice that his shoes were inappropriate and, but for the defendants' refusal to provide proper shoes, he would not have been injured.

[2] Franklin's original complaint stated he fell on April 7, 2025. However, this email suggests that Franklin fell either on March 31, 2025, or before. It is clear that he did not fall on April 7, 2025, as his complaint alleges.

"The exhaustion requirement protects the prison's administrative authority by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). As such, "a prisoner satisfies the exhaustion requirement when he gives a prison 'notice of, and an opportunity to correct a problem.'" *Id.* (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). For Franklin's claim that the defendants were deliberately indifferent because they refused to allow him to order proper shoes, it is clear that the institution had notice of the claim by way of Franklin's inmate complaint. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances, raising the same issue . . . if the objectionable condition is continuing." *Turley*, 729 F.3d at 650. "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.* The issue raised by Franklin's inmate complaint is that the defendants were refusing to provide him proper orthopedic shoes that were medically necessary. That he suffered an injury after he filed the inmate complaint is not a new claim; it is just a new injury resulting from the same complaint. Indeed, the emails that were part of the investigation of the inmate complaint show that the institution had the opportunity to investigate both the refusal to provide shoes and the injury Franklin sustained. As such, Franklin exhausted his administrative remedies as to this claim.

However, he did not exhaust his administrative remedies as to his claim that the defendants ignored his requests for accommodations stemming from his injury. That is a separate issue unrelated to the contents of his inmate complaint. While the

lack of proper shoes allegedly caused his injury, the lack of shoes did not cause the defendants to ignore his lower bunk requests. Franklin needed to file another inmate complaint to address that issue, and it is undisputed he did not.

## CONCLUSION

For the reasons stated above, Franklin exhausted his administrative remedies as to the defendants' alleged deliberate indifference to his request for medically prescribed shoes, but he did not exhaust his administrative remedies as to the claim that the defendants were deliberately indifferent to his request for accommodations after he was injured in his fall. The court grants in part and denies in part the defendants' motion for summary judgment on exhaustion grounds. Franklin's claim regarding accommodations is dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020). The court will issue an amended scheduling order resetting the case deadlines at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment on exhaustion grounds (ECF No. 27) is **GRANTED in part and DENIED in part**. Franklin's deliberate indifference claim as to the defendants' alleged deliberate indifference to requests for accommodations is **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin this 6th day of November, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge